DECISION
Before this Court is an appeal from a decision of the Zoning Board of Review of the Town of North Kingstown (the "Board"). J.M.M. Jr. Enterprises, Inc. and T. Miozzi, Inc. ("plaintiffs") seek reversal of the Board's decision of August 8, 2000 upholding the issuance of a zoning certificate. This Court has jurisdiction pursuant to G.L. 1956 §45-24-69.
 Facts and Travel
The plaintiffs are the owners of Lot 79 North Kingstown Assessor's Plat 45, a parcel of approximately 23.63 acres, zoned "Light Industrial" and located in a Zone One Groundwater Protection Area. The plaintiffs proposed to construct and operate a self-contained, stationary hot-mix asphalt plant on this tract. To that end, on February 1, 2000, plaintiffs wrote to the Director of Planning and Development for the Town of North Kingstown (the "Director" or "Ms. Cohen"), and requested a zoning certificate pursuant to G.L. 1959 § 45-24-54 and North Kingstown Zoning Ordinance § 21-10(c) (hereafter "§ 21-10(c)").
On February 1, 2000, Ms. Cohen issued a zoning certificate in which she stated that the proposed asphalt plant was not a permitted use under the Town of North Kingstown Zoning Ordinance (the "Zoning Ordinance"). Ms. Cohen stated that the proposed plant would violate the prohibition on storage or piping of petroleum products in a Groundwater Protection area. She also opined that an asphalt plant could not meet the performance standards of a Light Industrial zone.
The plaintiffs then instituted an action for declaratory judgment, C.A. No. WC2000-0073, seeking a ruling that as a matter of law, an asphalt plant was a permitted use. This Court dismissed the suit without prejudice, and plaintiffs appealed the Director's decision to the Board, which heard the appeal on June 27 and July 25, 2000.
At these advertised hearings, Ms. Cohen presented her observations of an asphalt plant similar to the proposed plant, derived during a tour conducted in December, 1999. Dr. Stanley M. Barnett, a professor of chemical engineering at the University of Rhode Island, testified about the chemical composition of asphalt. Finally, plaintiff Thomas Miozzi spoke about his experience of 20 years in the asphalt business, and about the proposed plant itself.
Following the second hearing, the Board unanimously upheld the zoning certificate. In its decision, dated August 8, 2000, the Board stated that because liquid asphalt cement is a petroleum product, it is included in the prohibition on storage and piping of such products in a groundwater protection area. The plaintiffs now timely appeal that decision.
 Standard of Review
The standard of review for this Court's appellate consideration of the decision is outlined in G.L. 1956 § 45-24-69(d), which states:
 "(d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a zoning board decision, this Court must examine the entire certified record to determine whether substantial evidence exists to support the finding of the board. Salve Regina College v. Zoning Bd.of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd.of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979));Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of the zoning board and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quotingApostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). It is only if the record is "completely bereft of competent evidentiary support" that a board of appeals decision may be reversed. Sartor v.Coastal Resources Management Council of Rhode Island, 434 A.2d 266, 272 (R.I. 1981).
 The Zoning Certificate
The Zoning Enabling Act of 1991 defines "zoning certificate" as a "document signed by the zoning enforcement officer, as required by the zoning ordinance, which acknowledges that a use, structure, building, or lot either complies with or is legally nonconforming to the provisions of the municipal zoning ordinance or is an authorized variation therefrom." G.L. 1959 § 45-54-31(65). The Act further states the purpose of these certificates and the procedure for obtaining one. "In order to provideguidance or clarification, the zoning enforcement officer shall, upon written request, issue a zoning certificate or provide information to the requesting party as to the determination by the official or agency within fifteen (15) days of the written request." G.L. 1959 § 45-24-54
(emphasis added).
The North Kingstown ordinance language mirrors that of the General Laws. See § 21-10(c); North Kingstown Zoning Ordinance § 21-22 (hereafter "§ 21-22"). The ordinances also state that the Director is the administrative officer responsible for issuing "any required zoning certificates." North Kingstown Zoning Ordinance § 21-10(a)(1).
Initially, the plaintiffs contend that the Director exceeded her authority by commenting that an asphalt plant would be unable to meet the Performance Standards of a Light Industrial Zone. They argue that the Director, when issuing a zoning certificate, may only determine whether a proposed use is permitted or prohibited by the zoning ordinances. However, the plain meaning of the statutes does not support this interpretation.
The Random House Dictionary (2nd ed. 1987) defines the act of guiding as "supply[ing] (a person) with advice or counsel." Advice is "an opinion or recommendation offered as a guide to action or conduct," whereas counsel is an "opinion or instruction given in directing the conduct or judgment of another." Guidance would therefore best be defined as an opinion, recommendation, or instruction given to direct the conduct or actions of another. Similarly, "clarify" means "to make (an idea, statement, etc.) clear or intelligible. Clarification is therefore the act of making something easier to understand.
The plaintiffs' construction of the Ordinances would limit the Director to providing only a strict application of one small part of the zoning Ordinances, leaving no room for the "guidance or clarification" mandated by statute. Zoning certificates are meant to give the administrative officer's opinion as to whether a use is permitted under the zoning ordinances, which necessarily includes performance standards. See § 45-25-54 and § 21-10(c).
Furthermore, "[i]t is the well-settled law in this state that a zoning board of review is presumed to have knowledge concerning those matters which are related to an effective administration of the zoning ordinance." Monforte v. Zoning Board of Review, 93 R.I. 447, 449,176 A.2d 726, 728 (1962). Knowledge about the authority of the Town's administrative officer to issue zoning certificates would be presumed by the Board. The Board's findings indicate that the issuance of the certificate in this case was "proper and within the jurisdiction" of the Director. This finding is not clearly erroneous.
 The Definition of "Petroleum Product"
At the time of the decision, § 21-22 defined "petroleum products" as "[g]asoline, fuel oil (Nos. 1, 3, 4, 5, and 6), waste oil, gasohol, [and] diesel oil (No. 1 and No. 2-D).[1]" Since neither "asphalt" nor "asphalt cement" is contained in this definition, the plaintiffs argue the decision should be reversed. The Town contends simply that the decision must be upheld because there was sufficient evidence to support it.
While definitions in a statute are generally binding on a court (seeTown of Scituate v. O'Rourke, 103 R.I. 499, 239 A.2d 176 (1968)), it is also the court's duty to establish and effectuate the intent of the legislature. See Local 400, International Federation of Technical Professional Engineers v. R.I. Labor Relation Bd., 747 A.2d 1002 (R.I. 2000). Therefore, if a "mechanical" application of the definition will defeat the legislative intent, the court should give effect to the purpose of the act. Commercial Union Ins. Co. v. Pelchat, 727 A.2d 676
(R.I. 1999). These rules of statutory construction apply equally to town ordinances. Mongony v. Bevilacqua, 432 A.2d 661 (R.I. 1981).
North Kingstown Zoning Ordinance § 21-186(h) (Table 1) (hereafter "§ 21-186(h)"), entitled "regulated uses in Zone 1 and Zone 2 groundwater protection areas," prohibits "[s]torage or piping of petroleum or refined petroleum products other than liquefied petroleum gases or petroleum products, which will provide heat for the premises." Sections 21-186(a) — (b) make it clear that the purpose of the Ordinance is to protect the Town's drinking water from pollution. Specifically, § 21-186(a) states that:
 "The groundwater underlying the town is the sole source of its existing and future drinking water supply; discharges of toxic and hazardous materials and sewage discharge threaten the quality of such groundwater supplies and hydrologically connected surface waters posing potential health and safety hazards and threatening economic loss to the community." North Kingstown Zoning Ordinance § 21-186(a).
This passage emphasizes the importance of protecting the town's water supply from contamination by any "potentially hazardous materials." North Kingstown Zoning Ordinance § 21-186(b).
Elsewhere in the Ordinance, the term "petroleum products" is used without any qualifying language. For example, "[u]nderground storage of hazardous materials, oil, gasoline, or other petroleum products" is prohibited by § 21-186(h) (emphasis added). This obviously refers to the list of materials defined in § 21-22. In light of the purpose of § 21-186, the prohibition on "petroleum or refined petroleum products" (emphasis added) contemplates a broader definition than § 21-22 offers. The additional language indicates that storage of any refined petroleum product is prohibited.
Further, on February 12, 2002, the North Kingstown Town Council amended the definition of "petroleum products." Our Supreme Court has held that when an amendment clarifies a statute, "the amendment is entitled to great weight in construing the preamendment version of the law." HometownProperties, Inc. v. Fleming, 680 A.2d 56, 62 (R.I. 1996). The new definition[2] extends the term to include "any product derived from or produced as a residual to the petroleum refining process." Since the Ordinance does not substantially change the definition, it serves as a clarification of the prior definition. Thus, such amendment, in addition to the Zoning Ordinance language, further expresses the legislative intent to include products such as asphalt in the groundwater protection area restrictions.
This Court does not find that the Board's ruling was clearly erroneous. At the July 25, 2000 hearing, Dr. Barnett repeatedly testified that asphalt is a product of the petroleum refining process. (Tr. of 7/25/00 at 7, 16, 17.) Further, Dr. Barnett stated that asphalt cement can be categorized as a refined petroleum product. (Tr. of 7/25/00 at 17.) This testimony was supported by documents submitted to the Board, defining asphalt as being "derived from petroleum," and "a product of petroleum."
This is sufficient evidence to support the conclusion that asphalt cement is included within the definition of a refined petroleum product and therefore prohibited. While plaintiffs submitted three articles intended to demonstrate the safety of asphalt paving material, the Board had discretion to accept or reject the evidence as it saw fit. BellevueShopping Center, 574 A.2d at 764. Since there is substantial evidence supporting the Board's decision, this Court must affirm it. Mendonsa, 495 A.2d at 257.
 Storage or Piping of Petroleum Products
The plaintiffs next argue that the proposed plant will not include any storage or piping of raw materials, and therefore the Board should not have found that § 21-186(h) prohibited their proposed use. Mr. Miozzi testified at both hearings that no storage would be involved in the operations.
Ms. Cohen stated in her affidavit of May 4, 2000 that during a tour of an asphalt plant similar to the proposed one, conducted at the plaintiffs' request, she observed the outdoor storage of raw materials, including liquid asphalt cement. She repeated this testimony at the June 27, 2000 hearing. Also, Dr. Barnett testified that asphalt cement is generally stored in large tanks before it is mixed. (Tr. of 7/25/00 at 14-15.)
The Board had before it substantial evidence that the proposed plant would require storage of asphalt cement, and therefore its denying the appeal on those grounds did not constitute an abuse of discretion. Since the record is not completely bereft of evidentiary support, this Court must affirm the ruling. Sartor, 434 A.2d at 272.
 The Action for Declaratory Judgment
The plaintiffs also include a claim for declaratory judgment, asking that this Court declare manufacturing and processing of asphalt to be a permitted use under the Zoning Ordinances. Under the Uniform Declaratory Judgment Act, this Court "shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." G.L. 1956 § 9-30-1. The purpose of this Act is to "facilitate the termination of controversies." Capitol Properties, Inc.v. State, 749 A.2d 1069 (R.I. 1999) (citing Fireman's Fund Insurance Co.v. E.W. Burman, Inc., 120 R.I. 841, 845, 391 A.2d 99, 101 (1978). The decision of a trial court to grant or deny relief under this act is purely discretionary. Sullivan v. Chafee, 703 A.2d 748 (R.I. 1997).
On February 12, 2001, the North Kingstown Town Council passed Ordinance 01-1, amending certain provision of the zoning ordinance. Included in this amendment was a change in the definition of "petroleum product" contained in § 21-22. The defendants argue that this Court must apply the amended definition to the declaratory judgment claim, in keeping with our Supreme Court's decisions in Solas v. Emergency Hiring Council ofR.I., 774 A.2d 820 (R.I. 2001) and Dunbar v. Tammelleo, 673 A.2d 1063
(R.I. 1996). The plaintiffs contend that we should apply the pre-amendment definition because the amendment violated due process. The plaintiffs further argue that they have acquired vested rights in the pre-amendment definition, pursuant to North Kingstown Zoning Ordinance § 21-7(b) (hereafter "§ 21-7(b)").
The plaintiffs first assert that the amendment violated due process because the statutory notice requirements for amendment of a zoning ordinance (G.L. 1956 § 45-24-33) were not met. In particular, the plaintiffs contend that the Town was required to give specific notice to all landowners affected by the amendment.
General Law's section 45-24-53 requires notice by publication unless the proposed amendment includes changes to the zoning map. If the zoning map is to be changed, specific notice to the affected landowners is required. G.L. 1956 § 45-24-53(a)-(e). Since Ordinance 01-1 contained only general changes to the zoning ordinance, the only requirement was notice by publication pursuant to G.L. 1956 § 45-24-53(a). Therefore the plaintiff's due process rights have not been substantially prejudiced.
The plaintiffs next argue with respect to their prayer for declaratory relief that they have acquired vested rights in the old definition by filing a substantially complete land development application, in accordance with § 21-7(b). Section 21-7(b) states that "substantially complete" means "all submittal requirements have been met." The plaintiffs' application does not meet these requirements. In her November 13, 2000 letter denying the application, Ms. Cohen stated that "[y]our purported land development application is not complete." Ms. Cohen referred the plaintiffs to the correct ordinances and enclosed a copy of the land development plan checklist, indicating which items had not been met. The plaintiffs' application therefore cannot be considered substantially complete. Accordingly, the claim for declaratory relief must be decided based on the amended definition.
It is well-settled that a plaintiff seeking declaratory judgment must first exhaust all administrative remedies. However, even if the petitioner has not exhausted all administrative remedies, declaratory judgment is appropriate if the complaint alleges that an ordinance is facially unconstitutional or that the agency or board had no jurisdiction over the matter. Kingsley v. Miller, 120 R.I. 372, 388 A.2d 357 (1978). The plaintiffs in the instant case have alleged neither.
Further, "[a] determination by an administrative agency which is essentially judicial in nature has been held appealable and therefore not subject to review in an action for declaratory judgment." 22A Am.Jur.2dDeclaratory Judgments § 90 (1988). Since it did not involve "rule-making or quasi-legislative powers," the Board's decision was judicial in nature. Id. Declaratory relief is therefore inappropriate in this case.
This Court has already determined with respect to this zoning appeal that asphalt cement is included in the prohibition on "storage or piping of petroleum or refined petroleum products" in a groundwater protection area. § 21-186(h). Since the issue is the same as that involved in the appeal, this Court denies the plaintiff's prayer for declaratory relief.
 Conclusion
After a review of the entire record, this Court decides that the findings, conclusions, and decision of the Board were not clearly erroneous in light of the reliable, probative and substantial evidence of the whole record, and did not constitute an abuse of discretion. Substantial rights of the appellant have not been prejudiced. Accordingly, the decision of the Board is affirmed.
Counsel shall submit the appropriate order for entry.
[1] As of February 12, 2001, this definition has been changed by Ordinance 01-1. Neither party has argued that the new definition should apply to the instant zoning appeal, and this Court will decide the appeal on the basis of the law which the Board had before it on July 25, 2000, when its decision was made.
[2] The new definition reads: "Crude oils or any product derived from or produced as a residual to the petroleum refining process including but not limited to gasoline, fuel oil (Nos. 1, 3, 4, 5, and 6), waste oil, gasohol, diesel oil (No. 1 and No. 2-D)." § 21-22.